UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 1, 2015
```

FRANKLYN CABRERA GARCIA et al.,                  :
                                                 :
                                  Plaintiffs,    :
                                                 :
                          -v-                    :        14-cv-8926 (KBF)
                                                 :
CHRYSLER GROUP LLC n/k/a FCA US LLC,             :        OPINION & ORDER
                                                 :
                                  Defendant.     :
                                                 :
------------------------------------------------------------------ X

KATHERINE B. FORREST, District Judge:

Defendant FCA US LLC, more commonly known as "Chrysler," manufactures vehicles that have a key component known as the "Totally Integrated Power Module," or "TIPM."  The TIPM functions as a vehicle's electronic nerve center, and it is responsible for controlling and distributing power to all of the vehicle's electrical functions, including its ignition and safety systems, fuel pump, airbags, windshield wipers, turn signals, and headlights and taillights.  Plaintiffs allege that a common defect in their vehicles' TIPMs infected 65 different model-years (referred to separately as a "Class Vehicle") of vehicles manufactured over a period of five model-years.

Plaintiffs commenced this action on November 10, 2014.  (ECF No. 1.)  Twelve plaintiffs from eleven different states[1] have brought, on behalf of themselves

---

[1] On August 19, 2015, plaintiff Franklin Lewis voluntarily dismissed his claims without prejudice pursuant to Rule 41(a)(1)(A)(i).  (ECF No. 68.)  On August 27, 2015, plaintiff Judy King did the same. (ECF No. 69.)  Because Lewis and King were the sole plaintiffs asserting claims under North Carolina and Virginia law, respectively, the Court dismisses all claims brought on behalf of the putative North Carolina and Virginia subclasses and does not discuss them further.  Going forward,

and as purported class representatives, 38 causes of action under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 et seq., and the laws of Alabama, Arizona, Florida, Georgia, Kentucky, New Jersey, New York, South Dakota and Texas (the "Subclass States").[2]  (Am. Compl. ¶¶ 283-746, ECF No. 37.)  Plaintiffs

---

the Court will refer to the Amended Complaint as including only ten plaintiffs and nine putative state subclasses.

[2] In the Amended Complaint, the following plaintiffs assert the following state law claims:

- Alabama: Key asserts claims for breach of contract/common law warranty (Claim III), and fraudulent concealment (Claim IV).  (Am. Compl. ¶¶ 327-41.)

- Arizona: Probasco asserts claims for violations of the Arizona Consumer Fraud Act (the "ACFA", Ariz. Rev. Stat. §§ 44-1521 et seq., (Claim V), breach of contract/common law warranty (Claim VI), and fraudulent concealment (Claim VII).  (Am. Compl. ¶¶ 342-71.)

- Florida: Tamburello asserts claims for violations of the Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA", Fla. Stat. §§ 501.21 et seq. (Claim VIII), breach of express and implied warranties (Claims IX and X), and fraudulent concealment (Claim XI).  (Am. Compl. ¶¶ 372-408.)

- Georgia: Franklin and Danielson assert claims under Georgia law for violations of Georgia's Uniform Deceptive Trade Practices Act (the "GUDTPA"), Ga. Code §§ 10-1-370 to 10-1-382 (Claim XII), breach of express warranty (Claim XIII), and fraudulent concealment (Claim XV), and Franklin asserts a claim for breach of implied warranty (Claim XIV).  (Am. Compl. ¶¶ 420-458.)

- Kentucky: Wright asserts claims for violations of the Kentucky Consumer Protection Act (the "KCPA"), Ky. Rev. Stat. §§ 367.110 et seq. (Claim XVI), breach of express and implied warranties (Claims XVII and XVIII), and fraudulent concealment (Claim XIX).  (Am. Compl. ¶¶ 459-510.)

- New Jersey: Mingione asserts claims for violations of the New Jersey Consumer Fraud Act (the "NJCFA"), N.J. Stat. §§ 56:8-1 et seq. (Claim XX), breach of implied warranty of merchantability (Claim XXI), and fraudulent concealment (Claim XXII).  (Am. Compl. ¶¶ 511-49.)

- New York: Garcia asserts claims for Plaintiff Garcia asserts claims under New York law for violations of N.Y. Gen. Bus. Law (the "NYGBL") §§ 349-50 (Claims XXIII and XXIV), breach of express warranty (Claim XXV), and fraudulent concealment (Claim XXVI).  (Am. Compl. ¶¶ 550-88.)

- South Dakota: Caron asserts claims for violations of the South Dakota Deceptive Trade Practices Act (the "SDDTPA"), S.D. Codified Laws §§ 37-24-1 et seq. (Claim XXX), breach of implied warranty (Claim XXXI), and deceit (fraud by omission) (Claim XXXII).  (Am. Compl. ¶¶ 627-64.)

- Texas: Taylor asserts claims for violations of the Texas Deceptive Trade Practices Act (the "TDTPA"), Tex. Bus. & Com. Code §§ 17.41 et seq. (Claim XXXIII), breach of implied warranty (Claim XXXIV), and fraud by concealment (Claim XXXV).  (Am. Compl. ¶¶ 665-707.)

purport to bring claims on behalf of all U.S. residents who purchased or leased a Class Vehicle equipped with Chrysler's seventh-generation TIPM ("TIPM-7") and they define nine putative subclasses of plaintiffs who made their purchase or signed their lease in any of the Subclass States.  (Am. Compl. ¶ 269.)  Plaintiffs seek damages, an order requiring Chrysler to adequately disclose and remedy the TIPM defect, and an injunction against Chrysler incorporating the defective TIPM into its vehicles, as well as interest, attorneys' fees, and costs.  (Am. Compl. at 165.) Chrysler has moved to dismiss all claims.[3]

All claims are based on the same general set of facts—that plaintiffs owned vehicles with defective TIPMs and that Chrysler is liable under various warranty theories as well as state fraud and consumer protection laws.  The Amended Complaint—though prolix—contains a number of deficiencies including a lack of sufficient allegations as to (1) whether the TIPM defects manifested within the time and mileage limits of the alleged warranties, (2) notice, (3) whether any breach may be plausibly construed as arising from a manufacturing defect, and (4) whether Chrysler had a duty to disclose the TIPM defects to plaintiffs.  For these reasons, and the additional reasons set forth below, Chrysler's motion to dismiss is GRANTED IN PART AND DENIED IN PART.[4]

---

[3] Defendant timely moved to dismiss on January 15, 2015.  (ECF No. 29.)  Following the initial pretrial conference on January 23, 2015, the Court granted plaintiffs leave to file an amended complaint, and accordingly denied that motion to dismiss as moot.  (ECF No. 33.)  Plaintiffs filed an amended complaint on February 20, 2015.  (ECF No. 37.)  Defendant moved to dismiss on March 6, 2015.  (ECF No. 40.)  Plaintiffs filed their opposition on March 27, 2015.  (ECF No. 46.)  The motion became fully briefed on April 10, 2015.  (ECF No. 49.)

[4] A full summary of the dispositions of plaintiffs' claims is set forth in a chart at the conclusion of this decision.

I.     BACKGROUND

    A.     <u>Factual Background</u>[5]

       1.     <u>The TIPM and the alleged defect.</u>

A TIPM consists of a printed circuit board-based module containing fuses, internal relays, and a microprocessor, and it functions as a vehicle's electronic nerve center.  (Am. Compl. ¶ 2.)  When a vehicle's TIPM fails, almost any part of the vehicle can function improperly or cease functioning—as plaintiffs colorfully describe it, the car becomes "possessed."  (Am. Compl. ¶ 6.)  For instance, a TIPM failure can cause vehicle stalling, unintended acceleration, sudden loss of electricity, inability to turn the vehicle off, sudden loss of headlights and taillights, inability to shut off the fuel pump, loss of security or ignition systems, airbag non-deployment, vehicle fire, and loss of control of windshield wipers and turn signals.  (Am. Compl. ¶ 15.)  A defective TIPM cannot reasonably be repaired, and so it must be replaced at significant cost.  (Am. Comp. ¶¶ 3, 7.)

Plaintiffs allege that the TIPM-7 is prone to sudden failure well before the end of the useful life of the vehicles in which it is installed.  (Am. Compl. ¶¶ 3, 38.)  Many consumers have allegedly spent hundreds to thousands of dollars on TIPM repairs, as well as other unnecessary repairs—including replacing batteries, fuel pumps, and wireless ignition modules—in the hopes of fixing problems created by defective TIPMs.  (Am. Compl. ¶ 120.)

---

[5] The following facts are those alleged or incorporated by reference in the Amended Complaint.  The Court here recounts only those facts relevant to resolving the pending motion to dismiss.

Chrysler has allegedly known of the TIPM defect since at least 2007, based on consumer complaints submitted to Chrysler and to the National Highway Traffic Safety Administration ("NHTSA"), multiple TIPM-related recalls and technical service bulletins, two NHTSA investigations into TIPM-related complaints, pre-release vehicle testing, and post-sale data about the performance of and repairs made to Chrysler's vehicles.  (Am. Compl. ¶¶ 47, 109.)

> 2. <u>Class vehicles.</u>

Plaintiffs assert claims as to 65 separate "Class Vehicles."  According to plaintiffs, all of the vehicles share a common TIPM defect.  (Am. Compl. ¶ 294.)  The Class Vehicles comprise the following makes and model years:

| Chrysler | Dodge | Jeep |
|---|---|---|
| • Chrysler 200 (2012–2013)<br>• Chrysler Grand Voyager (2010–2014)<br>• Chrysler Sebring (2011–2013)<br>• Chrysler Town & Country (2010–2014) | • Dodge Avenger (2012–13)<br>• Dodge Caravan (2010–2012)<br>• Dodge Durango (2011–2013)<br>• Dodge Grand Caravan (2010–2014)<br>• Dodge Journey (2010)<br>• Dodge Journey AWD (2010)<br>• Dodge Nitro (2010–2012)<br>• Dodge Ram 1500 Pickup (2010–2012)<br>• Dodge Ram 2500 Pickup (2010–2012)<br>• Dodge Ram 3500 Pickup (2010–2012)<br>• Dodge Ram 3500 Cab Chassis (2010–2012)<br>• Dodge Ram 4500 Cab Chassis (2011–2013)<br>• Dodge Ram 5500 Cab Chassis (2011–2013)<br>• Dodge Ram Cargo Van (2012–2014) | • Jeep Cherokee (2011)<br>• Jeep Grand Cherokee (2011–2012)<br>• Jeep Liberty (2010–2012)<br>• Jeep Wrangler (2010–2014)[6] |

(Am. Compl. ¶ 3.)

---

[6] The following makes and model years also come factory equipped with the TIPM: Chrysler Town & Country (2008); Dodge Caravan (2008); Dodge Grand Caravan (2008–2009); Dodge Journey (2008–2009); Dodge Nitro (2007–2009); Jeep Liberty (2008–2009); and Jeep Wrangler (2007–2009). (Am. Compl. ¶ 4.)

3.   <u>Warranties.</u>

Plaintiffs allege that their vehicles were covered by several warranties including warranties implied under state law as well as the following express warranties: the Basic Limited Warranty, the Vehicle Protection Plan warranty, the Maximum Care Coverage warranty, an extended powertrain warranty and an extended warranty from an unspecified source.

When originally sold, plaintiffs' vehicles were covered by Chrysler's Basic Limited Warranty.  (<u>See</u> Am. Compl. ¶ 123.)  The Basic Limited Warranty covers defects in "material, workmanship or factory preparation" that existed when the vehicle left the manufacturing plant in all parts other than tires and headphones for 36 months or for 36,000 miles on the odometer, whichever occurred first.  (Am. Compl. ¶¶ 123-24.)  Thus, the Basic Limited Warranty limits state law implied warranties "to the extent allowed by law, to the time periods covered by the express written warranties."  (Am. Compl. ¶ 125.)  Notably, it does not cover design defects.

Certified Pre-Owned Vehicles come with a "Maximum Care Coverage" warranty, which applies for the first 3 months of ownership or 3,000 miles on the odometer, running from the date of ownership or the expiration of the Basic Limited Warranty, whichever is more beneficial to the customer.  (Am. Compl. ¶ 128.)

One named plaintiff, Danielson, alleges that he and other members of the Class purchased extended warranty plans from dealers called "Vehicle Protection Plans," which extended their original warranties to cover up to 100,000 miles and provided varying coverage depending on the coverage level chosen.  (Am. Compl. ¶¶ 126, 166.)  The Vehicle Protection Plans included the "Silver Coverage," "Gold

Coverage," "Gold Plus Coverage," and "Platinum" plans.  (Am. Compl. ¶ 126.)
Danielson purchased a Silver Coverage Vehicle Protection Plan, which covered his
vehicle's electrical components, including his TIPM.  (Am. Compl. ¶¶ 126, 166.)

One named plaintiff, Tamburello, alleges that she also purchased an
extended warranty from an unspecified source that was "valid for 7 years or 85,000
miles, whichever came first."[7]  (Am. Compl. ¶ 241.)  Another named plaintiff,
Franklin, alleges that she purchased an "extended powertrain warranty" at the
time she purchased her vehicle.[8]  (Am. Compl. ¶ 181.)  Neither plaintiff alleges
further details in relation to these warranties, although Franklin alleges that when
she took her vehicle to a Dodge dealership, she was told that the TIPM was not
covered by her extended powertrain warranty.  (Am. Compl. ¶ 181.)

Chrysler also offers "Available Lifetime Certified Warranty Upgrades" for
certified pre-owned vehicles, which cover the vehicles for as long as the purchaser
owns them.  (Am. Compl. ¶¶ 128, 387.)  None of the plaintiffs alleges they
purchased an Available Lifetime Certified Warranty Upgrade.

Additionally, named plaintiffs Key, Probasco, Danielson, Mingione, Caron,
and Taylor allege that their vehicles were also covered by an implied warranty of
merchantability under a provision of the Uniform Commercial Code ("UCC")
adopted by the states of Alabama, Arizona, Georgia, New Jersey, South Dakota, and

---

[7] The Amended Complaint does not identify the source of Tamburello's "extended warranty," but the parameters appear to be different from any of the other express warranties identified by plaintiffs. Tamburello's failure to identify the source of this extended warranty is sufficient grounds to dismiss any claim to the extent it relies on that warranty.

[8] The Amended Complaint does not provide the terms of Franklin's "extended powertrain warranty." Without allegations plausibly showing that this warranty covered TIPM-related defects, any claim purportedly arising from this warranty must be dismissed.

Texas, respectively.  (Am. Compl. ¶¶ 397, 446, 488, 527, 642, 685.)  This implicit warranty guarantees that a merchant's goods are fit for the ordinary purposes for which such goods are used.

    4.   <u>Plaintiffs.</u>

Plaintiffs are purchasers or lessors of 7 of the 65 Class Vehicles with allegedly defective TIPMs.[9]  Plaintiffs seek to represent a nationwide class for all purchasers of any of the 65 Class Vehicles, as well as subclasses for the nine states in which the named plaintiffs reside.  The key factual allegations relating to each named plaintiff are set forth below.

    a)   Alabama: Ethan Key.

Ethan Key purchased a new 2012 Dodge Ram 1500 ST in October 2011 in Alabama.  (Am. Compl. ¶ 188.)  In or around August 2014, at an unspecified mileage, the vehicle stalled.  (Am. Compl. ¶ 193.)  Key took his vehicle to a dealership, which diagnosed a failed TIPM and damage to the fuel pump module. The repairs cost $1,500.  (Am. Compl. ¶ 194.)

    b)   Arizona: Jay Probasco.

Jay Probasco bought a certified pre-owned 2011 Jeep Grand Cherokee in June 2014 from a dealership in Arizona.  (Am. Compl. ¶ 228.)  Within a month of his purchase, at an unspecified mileage, the vehicle experienced a number of issues including stalling and problems starting the fuel pump, the power windows, engine turnover, and the remote start.  (Am. Compl. ¶ 233).  At a time and mileage

---

[9] Although plaintiffs do not allege with consistent particularity that all of their vehicle-related issues were caused by TIPM-related defects, the Court construes the Amended Complaint as alleging a causal connection as to each vehicle-related loss incurred by plaintiffs.

unspecified in the Amended Complaint, he took the vehicle to a Chrysler dealership, which performed diagnostic work and informed him that the vehicle needed a new TIPM and fuel pump.  (Am. Compl. ¶ 234.)  Probasco spent $118 for the diagnostic work and $400 replacing his vehicle's battery, and a new TIPM and fuel pump would cost him $1,200 and $500, respectively.  (See Am. Compl. ¶ 234.)  Probasco has parked the vehicle and rented a temporary replacement, but alleges no other specific damages.  (Am. Compl. ¶ 234.)

c)      Florida: Lisa Tamburello.

Lisa Tamburello bought a new 2011 Chrysler Town & Country vehicle on or about December 8, 2011 in Florida.  (Am. Compl. ¶ 236.)  She purchased an extended warranty from an unspecified source that was "valid for 7 years or 85,000 miles, whichever came first."  (Am. Compl. ¶ 241.)  One week after she purchased her vehicle, the dealership from which she bought the vehicle replaced the TIPM free of charge after she complained that the remote start feature was not working.  (Am. Compl. ¶¶ 236, 243.)  Her vehicle then experienced the following issues:

- In November 2013, at approximately 34,640 miles, the vehicle began to click loudly and the lights flashed on and off.  (Am. Compl. ¶ 243.) Tamburello took the vehicle to a dealership, where she was told that she had erased the vehicle's onboard computer by disconnecting the battery.  (Am. Compl. ¶ 243.)

- In February 2014, at approximately 35,625 miles her vehicle was towed to a dealership, which installed a new ignition switch.  (Am. Compl. ¶ 243.)

10

- In July 2014, at an unspecified mileage above 35,625 miles, all of the vehicle's lights flashed for a moment and then the vehicle died.  (Am. Compl. ¶ 243.)  Tamburello was able to restart the vehicle and drove it to a dealership, which installed a new battery at a cost to Tamburello of $270.  (Am. Compl. ¶ 243.)

- In August 2014, at 49,893 miles, the vehicle's lights started flashing and "the car died in the middle of the road."  (Am. Compl. ¶ 243.)  After disconnecting and reconnecting the battery, the vehicle started without incident.  (Am. Compl. ¶ 243.)  Tamburello then took the vehicle to a dealership, which performed an inspection that "turned up nothing." (Am. Compl. ¶ 243.)

- On December 26, 2014, at approximately 56,315 miles, the vehicle made a clicking noise, the lights flashed, and the car stalled.  (Am. Compl. ¶ 243.)  Tamburello took the car to a dealership, which could not duplicate these issues but found grounds for installing ground wire and a transmission range sensor.  (Am. Compl. ¶ 243.)

Tamburello alleges that she has spent $150 in gas and $120 for a hotel as a result of problems with her vehicle.  (Am. Compl. ¶ 243.)

Tamburello traded in her vehicle on January 6, 2015 and did not tell the dealer about the vehicle's history of stalling.  (See Am. Compl. ¶ 244.)  She received $14,500 in trade-in value, which was more than NADA Guide average trade-in value for her vehicle.  (Am. Compl. ¶¶ 244, 246.)  She believes that she could have

obtained greater value in a private party sale, but she did not want to sell the vehicle to a private party because of the stalling problem.  (Am. Compl. ¶ 245.)

          d)        Georgia: Ernest Danielson and Lee Franklin.

Ernest Danielson purchased a used 2011 Jeep Grand Cherokee on April 9, 2014 from a Chrysler dealership in Georgia.  (Am. Compl. ¶ 162.)  At the time of purchase, he bought a "Silver Coverage" extended warranty with a $250 deductible. (Am. Compl. ¶ 166.)  In or around September 2014, Danielson began experiencing problems with the vehicle not starting, the fuel pump continuing to run after turning off the ignition, and the starter and battery not functioning.  (Am. Compl. ¶ 168.)  In September 2014, Danielson took his vehicle to a Chrysler dealership, which informed him that his TIPM, starter, and battery needed to be replaced. (Am. Compl. ¶ 169.)  Danielson paid an unspecified amount for a diagnostic test and $567 (including $250 for an extended warranty deductible) for the repairs.  (Am. Compl. ¶¶ 169-70.)  He was told the TIPM and battery replacements were not covered by the vehicle's extended warranty.  (Am. Compl. ¶ 169.)

Lee Franklin purchased a used 2011 Dodge Durango in or around May 2014 from a Honda dealership in Georgia.  (Am. Compl. ¶ 173.)  At the time of purchase the vehicle had already been driven approximately 90,000 miles.  (Am. Compl. ¶ 179.)  She purchased an "extended powertrain warranty" at the time she purchased the vehicle.  (Am. Compl. ¶ 181.)  In or around August 2014, Franklin began experiencing problems with her vehicle, including not starting, stalling, and issues controlling the lights, horn, and windows.  (Am. Compl. ¶ 180.)  In September 2014, Franklin took her vehicle to a Dodge dealership, which after a $90 diagnostic test

told her that the TIPM needed to be replaced at a cost of $1,320, and that the TIPM was not covered by her vehicle's original warranty or her extended powertrain warranty.  (Am. Compl. ¶ 181.)  Franklin then had a private mechanic replace the TIPM at a total cost of $1,298 using a replacement TIPM she purchased on Dodgeparts.com.  (Am. Compl. ¶ 182.)  She alleges that she rented a car from a friend at $100 per week for two and a half weeks, and that her husband lost a work assignment because he did not have transportation.  (Am. Compl. ¶ 183.)

> e)      Kentucky: Martha Wright.

Martha Wright purchased a used 2010 Dodge Journey in July 2012 in Kentucky.  (Am. Compl. ¶ 257.)  At an unspecified time and mileage, Wright began to experience problems with her vehicle caused by a defective TIPM, including that the horn unexpectedly sounded and that the vehicle failed to start.  (Am. Compl. ¶ 262.)  She has twice replaced the vehicle's battery, at a total cost of $200.  (Am. Compl. ¶ 262.)  She has experienced personal inconvenience as a result of ignition issues.  (Am. Compl. ¶ 263.)  Wright has paid $1,000 for diagnostic tests and repairs at dealerships, but still the problems with starting persist.  (Am. Compl. ¶ 262.)

> f)      New Jersey: Anthony Mingione.

Anthony Mingione bought a new 2011 Dodge Ram 1500 on December 1, 2010 in New Jersey.  (Am. Compl. ¶ 216.)  In mid-2014, at an unspecified mileage, Mingione began having problems with his vehicle including that it failed to start and on one occasion the vehicle's electrical system shut down for a moment.  (Am. Compl. ¶ 223.)  Mingione had the battery changed at unspecified cost.  (Am. Compl. ¶ 223.)  On October 27, 2014, Mingione had the vehicle towed to a dealership, which

replaced the TIPM and the oil pressure switch in his vehicle, for which he paid $1,200 and $160, respectively.  (Am. Compl. ¶ 224.)

g)      New York: Franklyn Garcia.

Franklyn Cabrera Garcia purchased a certified pre-owned 2011 Dodge Durango on March 18, 2014 in New York.  (Am. Compl. ¶ 132.)  Shortly after purchase, at an unspecified mileage, Garcia began experiencing problems with his vehicle not starting and stalling, and the vehicle's sunroof, windows, headlights, and fuel pump were not operating properly.  (Am. Compl. ¶ 139.)  At an unspecified time and mileage, Garcia took his vehicle to a "private mechanic," and then to a Chrysler dealership, which informed him that his vehicle needed repairs to its fuel pump.  (Am. Compl. ¶ 141.)  In or around August 2014, Garcia noticed smoke coming from the fuse box under the vehicle's hood.  (Am. Compl. ¶ 142.)  On September 5, 2014, the vehicle suffered an electrical fire, which burned Garcia's right arm and totaled the vehicle, causing him to incur the costs of public transportation for himself, his pregnant wife, and his children, and also causing him to change jobs.  (Am. Compl. ¶¶ 144, 146-47.)

h)      South Dakota: Mindi Caron.

Mindi Caron purchased a pre-owned 2012 Jeep Liberty on March 14, 2014 from a Chrysler dealership in South Dakota.  (Am. Compl. ¶ 150.)  In November 2014, at an unspecified mileage, the vehicle failed to start, and after being jump-started, the vehicle's door locks did not work and the alarm went off.  (Am. Compl. ¶ 155.)  Caron took her vehicle to a Jeep dealership, which replaced the vehicle's TIPM at a cost of $800.  (Am. Compl. ¶ 156.)  On January 10, 2015, at an

unspecified mileage, the vehicle's "EMCOFF" dashboard light and the "4wd" dashboard light came on, and the car stalled on one occasion right after refueling. (Am. Compl. ¶ 157.)  On February 10, 2015, Caron took the vehicle back to the Jeep dealership, which informed her that it "could not duplicate the issue." (Am. Compl. ¶ 159.)

> i)      Texas: Nathan Taylor.

Nathan Taylor purchased a used 2011 Chrysler Town & Country vehicle in February 2012.  (Am. Compl. ¶ 249.)  In or around October 2013, Taylor's vehicle began experiencing problems with the air conditioner, dashboard lights and windshield wipers, as well as intermittent loss of acceleration power.  (Am. Compl. ¶ 254.)  He took his vehicle to multiple dealerships in an effort to repair the problems, which performed diagnostics, replaced the right cylinder head, made unspecified repairs, and repeatedly told him the problems were caused by a "software issue." (Am. Compl. ¶ 255.)  Taylor paid $200 in taxes for rental cars supplied by the dealerships.  (Am. Compl. ¶ 255.)  He continues to experience problems with his vehicle.  (Am. Compl. ¶ 255.)

> j)      Summary.

The following chart summarizes the plaintiffs and their vehicles:

| Plaintiff | State | Purchase Date | Model Year | Model | New / Pre-Owned / Used |
|---|---|---|---|---|---|
| **Key** | Alabama | 10/2011 | 2012 | Dodge Ram 1500 ST | New |
| **Probasco** | Arizona | 06/2014 | 2011 | Jeep Grand Cherokee | Certified Pre-Owned |
| **Tamburello** | Florida | 12/8/2011 | 2011 | Chrysler Town & | New |

15

| | | | | Country | |
|---|---|---|---|---|---|
| **Danielson** | Georgia | 4/9/2014 | 2011 | Jeep Grand Cherokee | Used |
| **Franklin** | Georgia | 05/2014 | 2011 | Dodge Durango | Used |
| **Wright** | Kentucky | 07/2012 | 2010 | Dodge Journey | Used |
| **Mingione** | New Jersey | 12/1/2010 | 2011 | Dodge Ram 1500 | New |
| **Garcia** | New York | 3/18/2014 | 2011 | Dodge Durango | Certified Pre-Owned |
| **Caron** | South Dakota | 03/14/2014 | 2012 | Jeep Liberty | Certified Pre-Owned |
| **Taylor** | Texas | 02/2012 | 2011 | Chrysler Town & Country | Used |

## II.   LEGAL STANDARD FOR MOTION TO DISMISS

To survive a Rule 12(b)(6) motion to dismiss, "the plaintiff must provide the grounds upon which [its] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In other words, the complaint must allege "enough facts to state a claim to relief that is plausible on its face."  Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010) (quoting Twombly, 550 U.S. at 570); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (same).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

The Court does not, however, credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." Id. If the court can infer no more than "the mere possibility of misconduct" from the factual averments—in other words, if the well-pleaded allegations of the complaint have not "nudged claims across the line from conceivable to plausible," dismissal is appropriate. Twombly, 550 U.S. at 570; Starr, 592 F.3d at 321 (quoting Iqbal, 556 U.S. at 679).

On a motion to dismiss, the Court accepts as true the factual allegations in the pleadings and draws all inferences in plaintiffs' favor. See Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555-57). If a fact is susceptible to two or more competing inferences, in evaluating these motions, the Court must, as a matter of law, draw the inference that favors the plaintiff so long as it is reasonable. N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC, 709 F.3d 109, 121 (2d Cir. 2013). "[T]he existence of other, competing inferences does not prevent the plaintiff[s'] desired inference from qualifying as reasonable unless at least one of those competing inferences rises to the level of an obvious alternative explanation." Id. (internal quotation marks omitted).

Where necessary, the Court may supplement the allegations in the Complaint with facts from documents either referenced in the Complaint or relied upon in framing the Complaint. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents

incorporated by reference in the complaint."); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) ("[W]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint[,] the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991)).

III.   DISCUSSION

All claims at issue in this case arise from the same series of general facts—that plaintiffs suffered losses when their TIPMs failed; plaintiffs collectively allege Chrysler is liable based on breach of various warranties and failure to disclose known defects as required under state fraud and consumer protection laws.  At the outset, the Court addresses plaintiffs' warranty claims—first the express and implied warranty claims brought under the laws of the various Subclass States, and then the federal Magnuson-Moss Warranty Act claims, brought on behalf of the nationwide class.  The latter warranty claims generally flow from the former.  The Court next addresses plaintiffs' fraudulent concealment and consumer protection claims brought under the laws of the Subclass States.  Finally, the Court responds to plaintiffs' request for leave to amend the complaint in the event that any of their claims are dismissed.

A.   Breach of Warranty

1.   Breach of express warranty.

Seven of the ten plaintiffs assert express warranty claims under state law: Garcia (New York), Danielson (Georgia), Franklin (Georgia), Key (Alabama),

Probasco (Arizona), Tamburello (Florida), and Wright (Kentucky).  (See ECF No. 46 at 17.)  For the reasons stated below, Probasco and Garcia have stated breach of express warranty claims based on the Maximum Care Coverage warranty, but all of plaintiffs' other breach of express warranty claims are dismissed.

a)    Conveyance of warranty.

As a preliminary matter Chrysler argues that none of these plaintiffs adequately allege that any warranty was actually conveyed to them.  This argument fails.

Key and Tamburello purchased new Chrysler vehicles, and they allege that all new vehicles were covered by the Basic Limited Warranty.  They have therefore adequately alleged that an express warranty was conveyed to them at the time of initial purchase.  Similarly, Probasco and Garcia purchased certified pre-owned vehicles, and they allege that all certified pre-owned vehicles come with a Maximum Care Coverage warranty, which runs from the date of the certified pre-owned vehicle sale or the expiration of the Basic Limited Warranty—implying that they were conveyed an express warranty under the Basic Limited Warranty, or the Maximum Care Coverage warranty, or both.  They too have therefore adequately alleged that an express warranty was conveyed to them.

Danielson, Franklin, and Wright purchased used vehicles.  Danielson alleges that he bought a Silver Coverage Vehicle Protection Plan, which provides for an express warranty.  Further, Franklin's and Wright's allegations imply that used cars may be subject to the Basic Limited Warranty, provided that the car is still within that warranty's time/mileage limits.  (See, e.g., Am. Compl. ¶¶ 179, 181,

262.)  Danielson, Franklin, and Wright have therefore adequately alleged that an express warranty was conveyed to them.

In sum, Chrysler's argument that Garcia, Danielson, Franklin, Key, Probasco, Tamburello, and Wright do not allege that an express warranty was conveyed to them lacks merit.

> b)    Pre-suit notice: Alabama and Georgia.

Chrysler argues that Key's, Danielson's, and Franklin's express warranty claims should be dismissed because they did not give Chrysler pre-suit notice of their claims, as is required under Alabama and Georgia law.  The Court agrees.

To maintain a breach of warranty claim under Alabama's and Georgia's Uniform Commercial Code, pre-suit notice of the alleged breach of warranty to a seller is required.  See Ala. Code § 7-2-607(3)(a) ("The buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."); Ga. Code § 11-2-607(3)(a) (same); Fowler v. Goodman Mfg. Co. LP, No. 2:14–CV–968–RDP, 2014 WL 7048581, at *5-6 (N.D. Ala. Dec. 12, 2014); Monticello v. Winnebago Indus., Inc., 369 F. Supp. 2d 1350, 1358 (N.D. Ga. 2005); Roland v. Ford Motor Co., 655 S.E.2d 259 (Ga. Ct. App. 2007) ("Georgia law imposes two requirements for establishing a claim of breach of a written warranty: '(1) notice of the defect and (2) a reasonable opportunity to repair the defect.'" (quoting Knight v. Am. Suzuki Motor Corp., 612 S.E.2d 546, 549 (Ga. Ct. App. 2005))).  "Affirmatively pleading notice is critical to the stating of a claim for breach of warranty under Alabama law."  Smith v. Apple, Inc., Civ. Action No. 08-AR-1498-S, 2009 WL 3958096, at *1 (N.D. Ala. Nov. 4, 2009).

Plaintiffs argue that the pre-suit notice requirement is inapplicable because Chrysler was a remote manufacturer, rather than the seller, of Key's, Danielson's, and Franklin's vehicles.  Plaintiffs, however, fail to allege that they provided Chrysler or the direct sellers of their vehicles with notice of the alleged breach of warranty as required under Alabama and Georgia law.  See Selby v. Goodman Mfg. Co., LP, No. 2:13-CV-2162-RDP, 2014 WL 2740317, at *3 (N.D. Ala. June 17, 2014); Lewis v. Mercedes-Benz USA, LLC, No. Civ.A.1:03CV4000–JOF, 2004 WL 3756384, at *4 (N.D. Ga. Sept. 13, 2004).  Further, at least one Alabama federal district court has held that pre-suit notice applies to a remote manufacturer to the same extent as a direct seller.  Hobbs v. Gen. Motors Corp., 134 F. Supp.2d 1277, 1285 (M.D. Ala. 2001) ("[R]emote manufacturers should be afforded the same protections as sellers, either by way of notice provided directly to them, or through notice provided to them by the direct seller from the buyer.").[10]  Although plaintiffs argue that Chrysler was put on notice of TIPM-related defects as a result of consumer complaints submitted to it and to the NHTSA, multiple TIPM-related recalls and technical service bulletins, two NHTSA investigations, and Chrysler's access to post-sale data about the performance of and repairs made to Chrysler's vehicles, plaintiffs fail to plausibly allege how these events gave notice of plaintiffs' breach of warranty claims.[11]

---

[10] Chrysler cites McCabe v. Daimler AG, 948 F. Supp. 2d 1347 (N.D. Ga. 2013), for the proposition that direct notice to the manufacturer is required under Georgia law, but in McCabe the court held that written notice to the manufacturer was required under the terms of a warranty itself—not under Georgia law as a general matter.  See id. at 1359-60.

[11] Plaintiffs' citations to SunTrust Bank v. Hightower, 660 S.E.2d 745 (Ga. Ct. App. 2008), and Hudson v. Gaines, 403 S.E.2d 852 (Ga. Ct. App. 1991), for the proposition that the filing of suit itself

c)      Design defect versus manufacturing defect.

All plaintiffs claim that the alleged TIPM failures in their vehicles violated the Basic Limited Warranty as a result of "design defects, manufacturing defects, or both." (Am. Compl. ¶¶ 149, 161, 172, 187, 196, 206, 227, 235, 248, 256, 264.)  "[A] manufacturing defect . . . results when a mistake in manufacturing renders a product that is ordinarily safe dangerous so that it causes harm" and "a design defect . . . results when the product as designed is unreasonably dangerous for its intended use." McCarthy v. Olin Corp., 119 F.3d 148, 154-55 (2d Cir. 1997).  The Basic Limited Warranty exclusively covers manufacturing defects e.g. in "material, workmanship or factory preparation" (Am. Compl. ¶ 124). See, e.g., Cali v. Chrysler Grp. LLC, No. 10 Civ. 7606(JSR), 2011 WL 383952, at *2 (S.D.N.Y. 2011), aff'd, 426 F. App'x 38 (2d Cir. 2011) (summary order) ("Chrysler's Basic Limited Warranty covers only defects in 'material, workmanship or factory preparation'—not defects in vehicle design.").  Chrysler argues that although plaintiffs plead manufacturing and design defect claims in the alternative, plaintiffs' express warranty claims based on the Basic Limited Warranty fail because they actually allege only a design defect.

"[T]here is nothing inconsistent in pleading claims for both design defect and manufacturing defect: a plaintiff is permitted to advance alternative theories of liability for a defendant's allegedly wrongful conduct." Benefield v. Pfizer Inc., No. 14–CV–3394 (JPO), 2015 WL 1958929, at *8 (S.D.N.Y. May 1, 2015) (citing Kruse v.

---

can satisfy the notice requirement, are similarly unavailing.  Both courts relied on the particular circumstances of the case in making those rulings.  In both cases, law enforcement officials had confiscated the vehicles at issue as stolen property before suit was brought. See SunTrust Bank, 660 S.E.2d at 749; Hudson, 403 S.E.2d at 853.

Wells Fargo Home Mortg., Inc., 383 F.3d 49, 55 n.3 (2d Cir. 2004)); see also Alin v.

Am. Honda Motor Co., Civ. Action No. 08-4825 (KSH), 2010 WL 1372308, at *6

(D.N.J. Mar. 31, 2010) (noting that at the pleading stage, "the distinction between

defect in design and defect in materials or workmanship" is often a "matter of

semantics," and thus the key question a court must ask is whether "sufficient facts

are alleged to assert both [claims]").  "It is difficult for a plaintiff at th[e pleading]

stage in the litigation to know the source of the defect that was responsible for the

harm caused: whether there was a surprising manufacturing problem, [or] a

systemic issue with a product in its design."  Bailey v. Janssen Pharmaceutica, Inc.,

288 F. App'x 597, 605-06 (11th Cir. 2008) (unpublished).

     While a plaintiff may, as a general matter, plead manufacturing and design

defects in the alternative, there is authority for the proposition that in a putative

class action alleging breach of warranty claims, a manufacturing defect claim pled

in the alternative to a design defect claim is subject to dismissal at the motion to

dismiss stage where the complaint makes only "offhand references to

manufacturing defects" and the purported class includes "all purchasers or lessees"

of the vehicles at issue.  Sater v. Chrysler Grp. LLC, No. EDCV 14–00700–VAP

(DTBx), 2015 WL 736273, at *4 (C.D. Cal. Feb. 20, 2015); but see Bearden v.

Honeywell Int'l Inc., No. 3:09-1035, 2010 WL 3239285, at *7 (M.D. Tenn. Aug. 16,

2010) (allowing pleading in the alternative of manufacturing defect and design

defect claims concerning an electronic air cleaner device where the complaint "d[id]

not foreclose the possibility that th[e alleged defect] is caused by some sort of persistent manufacturing defect").

The Court is persuaded that the reasoning in <u>Sater</u> is sound and that, as currently pled, the grounds for dismissal relied upon in <u>Sater</u> are present here. Plaintiffs merely rely on offhand references in the Amended Complaint to support their manufacturing defect claims. The only allegations relating to manufacturing defects are the repetitive statements that the TIPM in each plaintiff's vehicle was "defective because of design defects, manufacturing defects, or both." (Am. Compl. ¶¶ 149, 161, 172, 187, 196, 206, 227, 235, 248, 256, 264.) Further, the Amended Complaint alleges that <u>all</u> Class Vehicles "share a <u>common</u> defect in that the TIPM is prone to sudden and unexpected failure during normal operation," (Am. Compl. ¶ 294 (emphasis added)), and the national class and state subclasses consist of "<u>[a]ll persons</u> who purchased or leased a Class Vehicle equipped with a TIPM-7." (Am. Compl. ¶¶ 268-69 (emphasis added).) In other words, plaintiffs allege that every single vehicle equipped with a TIPM-7—regardless of where it was manufactured and on what machines—is defective. That allegation strongly suggests a defect in the design of the TIPM-7, rather than a mistake in the manufacturing process itself. Although the Court believes it is a close call, without providing more specific allegations to the effect that the TIPM failures could have been caused by a flaw in Chrysler's nationwide manufacturing process, Plaintiffs fail to set forth sufficient facts to state a manufacturing defect claim on behalf of the various state subclasses.

Therefore, because plaintiffs only adequately allege design defects and the Basic Limited Warranty does not cover design defects, to the extent that the breach of express warranty claims of Key, Tamburello, Probasco, Garcia, Danielson, Franklin, and Wright are based on the Basic Limited Warranty, those claims are dismissed.

d)   Time/mileage limits.

With the exception of Tamburello, all of the plaintiffs asserting breach of express warranty claims based on the Basic Limited Warranty have failed to adequately allege that they began experiencing potentially TIPM-related problems within the time/mileage duration limits of the Basic Limited Warranty. This provides a separate ground for dismissal of these claims. Probasco and Garcia have adequately stated a breach of express warranty claim based on the Maximum Care Coverage warranty. All of plaintiffs' other breach of express warranty claims must be dismissed due to lack of sufficient factual allegations.

"[T]he general rule is that an express warranty does not cover repairs made after the applicable time or mileage periods have elapsed." Abraham v. Volkswagen of Am., Inc., 795 F.2d 238, 250 (2d Cir. 1986) (collecting cases); see also Szymczak v. Nissan N. Am., Inc., No. 10 CV 7493(VB), 2011 WL 7095432, at *8 (S.D.N.Y. Dec. 16, 2011) (same). Since all Chrysler vehicles are at some point in time covered by the Basic Limited Warranty, the Court must assess whether each of the seven plaintiffs asserting express warranty claims have adequately alleged that they first began experiencing potential TIPM issues within the time/mileage limit of their Basic Limited Warranty.

25

Key purchased his new 2012 Dodge Ram 1500 ST in October 2011.  (Am. Compl. ¶ 188.)  His car did not begin experiencing problems until August 2014, which is within the three-year duration limit of the Basic Limited Warranty.  (Am. Compl. ¶ 193.)  However, Key does not allege—and nor do his allegations imply— that when his vehicle began experiencing problems it had less than 36,000 miles on the odometer.  Accordingly, Key has failed to adequately allege that he began to experience TIPM problems within the time/mileage duration limits of his Basic Limited Warranty.

Tamburello bought her 2011 Chrysler Town & Country on or about December 8, 2011.  (Am. Compl. ¶ 236.)  She began to experience potential problems with her replacement TIPM in November 2013, at approximately 34,640 miles—within the 3-year/36,000 mile time/mileage limit for her Basic Limited Warranty.  (Am. Compl. ¶ 243.)  She has therefore adequately alleged that she began to experience TIPM problems within the time/mileage duration limits of her Basic Limited Warranty— but her claim must nevertheless be dismissed because it is not based on a manufacturing defect, as explained above.

Probasco bought a certified pre-owned 2011 Jeep Grand Cherokee in June 2014.  (Am. Compl. ¶ 228.)  The vehicle began experiencing problems within one month of purchase, at an unspecified mileage.  (Am. Compl. ¶ 233.)  There are no allegations with respect to his vehicle's original purchase date, its mileage at the time of sale or at the time it began experiencing potential TIPM problems.  As a

result, Probasco has failed to adequately allege that his vehicle began experiencing problems within the period of the Basic Limited Warranty.

Garcia bought a certified pre-owned 2011 Dodge Durango on March 18, 2014. (Am. Compl. ¶ 132.)  He began experiencing problems shortly after his purchase at an unspecified mileage.  (Am. Compl. ¶ 139.)  Again, there are no allegations as to his vehicle's original purchase date, its mileage at the time of sale or at the time it began experiencing potential TIPM problems.  And, again, as a result Garcia has failed to adequately allege that his vehicle began experiencing problems within the period of the Basic Limited Warranty.

Danielson, Franklin, and Wright all purchased used vehicles.  There are no allegations regarding the date these vehicles were originally purchased new, nor are there allegations regarding the mileage at which the vehicles began experiencing potential TIPM problems.[12]  Danielson, Franklin, and Wright have therefore failed to adequately allege that their vehicles began experiencing problems within the period of the Basic Limited Warranty.

Accordingly, only Tamburello has adequately alleged the appropriate time/mileage limit required to support a potential breach of express warranty claim predicated on the Basic Limited Warranty.  To the extent the breach of express

---

[12] Franklin alleges that in May 2014, when she purchased her used 2011 Dodge Durango, "approximately 10,000 miles remained on the vehicle's original, 100,000-mile warranty" (Am. Compl. ¶¶ 173, 179)—but it is unclear if the warranty's time limit had run when, three months later, she began experiencing problems with the vehicle's TIPM (see Am. Compl. ¶¶ 180-81).  In any event, Franklin's failure to allege when her vehicle was purchased itself justifies dismissal of her breach of express warranty claims.

warranty claims of Key, Probasco, Garcia, Danielson, Franklin, and Wright are based on the Basic Limited Warranty, those claims are dismissed.

The Maximum Care Coverage warranty that comes with certified pre-owned vehicles runs for 3 months or an additional 3,000 miles on the odometer, running from the date of the certified pre-owned vehicle sale or the expiration of the Basic Limited Warranty, whichever is more beneficial to the customer.  Probasco and Garcia purchased certified pre-owned vehicles.  Probasco's and Garcia's potentially TIPM-related issues started shortly after their purchases (one month after, in Probasco's case).  The mileage of their vehicles at the time is not alleged; it is plausible that Probasco and Garcia were within the 3-month or 3,000-mile limit of the Maximum Care Coverage warranty.

Danielson also alleges that he purchased a Silver Coverage extended warranty with a $250 deductible.  (Am. Compl. ¶ 166.)  He purchased his vehicle on April 9, 2014, and began experiencing problems in or around September 2014.  (Am. Compl. ¶¶ 162, 168.)  The Amended Complaint does not specify the duration of the Silver Coverage warranty; it states only that the Silver Coverage warranty extends the original warranty up to 100,000 miles.  (See Am. Compl. 126.)  Danielson's vehicle's mileage at the time it began experiencing problems is not alleged. Danielson has therefore failed to adequately allege that his vehicle began experiencing issues within the Silver Coverage warranty's time/mileage limits.

Franklin also alleges that she purchased an extended powertrain warranty (Am. Compl. ¶ 181), and Tamburello purchased an extended warranty that was

valid for 7 years or 85,000 miles, whichever came first (Am. Compl. ¶ 241).  Neither Franklin nor Tamburello alleges that these warranties were issued by Chrysler. Accordingly, to the extent Franklin and Tamburello assert breach of express warranty claims based on these warranties, these claims are dismissed.

*     *     *

In sum, only Probasco's and Garcia's breach of express warranty claims based on the Maximum Care Coverage warranty pass muster at this stage.

### 2.   Breach of implied warranty of merchantability.

Plaintiffs Key, Probasco, Danielson, Mingione, Caron, and Taylor assert breach of the implied warranty of merchantability claims under the laws of Alabama, Arizona, Georgia, New Jersey, South Dakota, and Texas, respectively.[13] Each of these states has adopted the provision of the UCC regarding the implied warranty of merchantability, under which every contract for the sale of goods contains an implicit warranty that the goods are fit for the ordinary purposes for which such goods are used.[14]  See Ala. Code § 7-3-314; Ariz. Rev. Stat. § 47-2314; Ga. Code § 11-2-314; N.J. Stat. § 12A:2-314; S.D. Codified Laws § 57A-2-314; Tex. Bus. & Com. Code § 2.314.

---

[13] Tamburello, Franklin, and Wright have withdrawn their implied warranty of merchantability claims.  (ECF No. 46 at 23.)  Garcia does not assert an implied warranty claim.  (See Am. Comp. ¶¶ 550-88.)

[14] Claims III and VI assert that Chrysler has breached a "common law warranty" under the laws of Alabama and Arizona, respectively.  However, in Alabama and Arizona, implied warranty claims pertaining to a sale of goods are governed not by the common law, but by the UCC.  Because for all of the other states as to which plaintiffs seek a remedy for breach of an implied warranty plaintiffs assert a breach of the implied warranty of merchantability, the Court construes Claims III and VI to assert such claims as well.  The Court further notes that nowhere in the Amended Complaint do plaintiffs assert a claim for breach of the implied warranty of fitness for a particular purpose.

Under UCC § 2-316, a seller of goods may exclude or modify the implied warranty of merchantability or any part of it, provided that they do so in writing and in conspicuous language.  Ala. Code § 7-2A-214; Ariz. Rev. Stat. § 47-2316; Ga. Code § 11-2-316; N.J. Stat. § 12A:2-316; S.D. Codified Laws § 57A-2-316; Tex. Bus. & Com. Code § 2.316.  Consistent with this provision, courts have held that a manufacturer may limit implied warranties to the duration of their express warranty.  See, e.g., Deburro v. Apple, Inc., No. A–13–CA–784–SS, 2013 WL 5917665, at *6 (W.D. Tex. Oct. 31, 2013) (upholding "conspicuous" disclaimer in express warranty limiting implied warranties to "the duration of the express warranty"); Meserole v. Sony Corp. of Am., Inc., No. 08 Cv. 8987(RPP), 2009 WL 1403933, at *9 (S.D.N.Y. May 19, 2009) (enforcing disclaimer that stated that any implied warranty of merchantability or fitness for a particular purpose was limited to the duration of an express warranty); McCalley v. Samsung Elecs. Am. Inc., Civil Action No. 07-2141 (JAG), 2008 WL 878402, at *7 (D.N.J. Mar. 31, 2008) ("Plaintiff's breach of implied warranty claim fails because the duration of the implied warranty period is consistent with the express warranty period . . . .").

Alabama, Arizona, and Georgia impose additional requirements for breach of implied warranty claims.  In Alabama, implied warranties are applicable only to sellers, not to manufacturers.  Ex parte Gen. Motors Corp., 769 So.2d 903, 910 (Ala. 1999); Morris Concrete, Inc. v. Warrick, 868 So.2d 429, 435 (Ala. Civ. App. 2003).  Arizona and Georgia require privity to assert a claim for breach of implied warranty under the UCC.  See, e.g., Monticello v. Winnebago Indus., Inc., 369 F. Supp. 2d

1350, 1361 (N.D. Ga. 2005) ("Because Plaintiff is not in privity with Defendants, Plaintiff may not maintain a cause of action against them for breach of the implied warranty of merchantability."); Chaurasia v. Gen. Motors Corp., 126 P.3d 165, 171 (Ariz. Ct. App. 2006) ("Under Arizona law, privity of contract is required to maintain an action for breach of an implied warranty."); McQueen v Minolta Bus Solutions, Inc., 620 S.E.2d 391, 393 (Ga. App. 2005) ("Implied warranties . . . can only run to a buyer who is in privity of contract with the party against whom the implied warranty is being asserted.").

The Basic Limited Warranty expressly states implied warranties under state law "are limited, to the extent allowed by law, to the time periods covered by the express written warranties" in the Basic Limited Warranty.  (Am. Compl. ¶ 125.) As this limitation is expressed in writing and in clear, conspicuous language, it is valid and enforceable.  As explained above, Probasco and Danielson have not adequately alleged that their vehicles began experiencing problems within the three-year duration limit of the Basic Limited Warranty, and their implied warranty claims under Arizona and Georgia law are accordingly dismissed.

Of the plaintiffs who have brought breach of implied warranty claims, including Key, Probasco, Danielson, Mingione, Caron, and Taylor, only Taylor has stated a plausible claim.  The breach of implied warranty claims of Probasco, Danielson, Mingione, and Caron must be dismissed due to the lack of adequately pled or implied warranties in the Basic Limited Warranty.  Key's implied warranty of merchantability claims be dismissed due to lack of privity, which also provides a

separate and independent ground for dismissing Probasco's and Danielson's implied warranty of merchantability claims.

Mingione's and Caron's implied warranty claims must also be dismissed. Mingione purchased a new 2011 Dodge Ram 1500 on December 1, 2010 in New Jersey, and began experiencing problems with his vehicle in mid-2014 (Am. Compl. ¶¶ 216, 223)—over three years later, and thus outside of the Basic Limited Warranty period. Caron purchased a pre-owned 2012 Jeep Liberty on March 14, 2014, and began experiencing potentially TIPM-related issues with her vehicle in November 2014. (Am. Compl. ¶¶ 150, 155.) Caron has not alleged the original purchase date of her vehicle, and therefore she has failed to allege that the vehicle's Basic Limited Warranty, and, by extension, that her implied warranty was in effect when she began experiencing problems. Accordingly, the implied warranty claims of Mingione and Caron are dismissed.

Taylor's implied warranty claim, however, may proceed. Taylor purchased a used 2011 Chrysler Town & Country, and began experiencing potentially TIPM-related issues in October 2013 (Am. Compl. ¶¶ 249, 254)—within the three-year Basic Limited Warranty period.[15] Chrysler's motion to dismiss this claim is therefore denied as to Taylor.

Plaintiffs argue that their implied warranty of merchantability claims should not be dismissed because several courts have recognized that the discovery of a latent defect after several years of use of a vehicle does not preclude an implied

---

[15] The Court here assumes that a 2011 Chrysler Town & Country could not have been purchased before October 2010.

warranty of merchantability claim.  In support of this argument, plaintiffs cite Skeen v. BMW of N. Am., LLC, Civ. No. 2:13–cv–1531–WHW–CLW, 2014 WL 283628 (D.N.J. 2014), Jekowsky v. BMW of N. Am., LLC, No. C 13–02158 JSW, 2013 WL 6577293 (N.D. Cal. Dec. 13, 2013), and Hornberger v. Gen. Motors Corp., 929 F. Supp. 884 (E.D. Pa. 1996).  In Skeen, the District of New Jersey stated that while "a claim for breach of implied warranty must ordinarily arise shortly after purchase," plaintiffs may state a breach of implied warranty of merchantability claim by alleging that the warranty terms were "manipulated . . . to render them unconscionable."  2014 WL 283628, at *16.  Because the plaintiffs had alleged that the "[d]efendants knew the defects would manifest and manipulated the warranty term to make sure it did not happen until after the warranty term expired," id. at *1, plaintiffs stated a plausible breach of implied warranty claim, id. at *16.  Here, there are no allegations that Chrysler manipulated the terms of any of the warranties at issue—only conclusory allegations that any attempts by Chrysler to limit implied warranties would be unconscionable.  (See Am. Compl. ¶¶ 296-98.) Skeen thus does not counsel against dismissing Mingione's implied warranty claims.  As for Jekowsky and Hornberger, those cases concerned implied warranty claims under the laws of California and Pennsylvania, respectively, and therefore have no bearing on plaintiffs' claims, which are based on other states' laws.  See Jekowsky, 2013 WL 6577293, at *1; Hornberger, 929 F. Supp. at 886.

Key's implied warranty claim must also be dismissed because under Alabama law implied warranties are applicable only to sellers, and he purchased his vehicle

from a dealership, not directly from Chrysler.  (Am. Compl. ¶ 188.)  Similarly, Probasco's and Danielson's implied warranty claims must also be dismissed on the independent ground that they too purchased their vehicles from dealerships, not directly from Chrysler (see Am. Compl. ¶¶ 1623, 228), and so they have failed to allege they were in privity with Chrysler, as is required under Arizona and Georgia law.

Thus, Taylor's breach of implied warranty of merchantability claim is the only one remaining.  It passes muster at this stage.  The ordinary purpose of a vehicle is to provide reasonably safe transportation.  See, e.g., Jackson v. Eddy's LI RV Ctr., Inc., 845 F. Supp. 2d 523, 531 (E.D.N.Y. 2012).  Plaintiffs have broadly alleged that due to defective TIPMs, the Class Vehicles at times experience issues with their electrical components that can make driving unsafe.  As to Taylor's implied warranty claim, then, Chrysler's motion to dismiss is DENIED.[16]

In conclusion, Taylor has stated a plausible breach of implied warranty of merchantability claim, and those of Key, Probasco, Danielson, Mingione, and Caron are dismissed.[17]

---

[16] Chrysler argues that because plaintiffs allege that their vehicles' TIPMs did not break down after "years and tens-of-thousands of miles of use," they have not adequately alleged a breach of an implied warranty, citing to Sheris v. Nissan N. Am. Inc., Civ. No. 07-2516 (WHW), 2008 WL 2354908 (D.N.J. June 3, 2008).  In Sheris, the court noted that "'[t]he weight of authority, from courts across the country, indicates that plaintiffs may not recover for breach of the implied warranty of merchantability under the facts' where plaintiffs have driven their cars without problems for years." Id. at *6 (quoting In re Ford Motor CO. Ignition Switch Prods. Liab. Litig., Nos. 96-3125, 96-1814, 96-3198(JBS), 2001 WL 1266317, at *22 (D.N.J. Sept. 30, 1997)).  But that case involved an implied warranty claim concerning brake pads and rotors—components that are expected to break down with repeated use, unlike a TIPM.  The rationale underlying the statement in Sheris to which plaintiffs cite does not apply in this case.

[17] Key and Probasco assert alternative claims for breach of contract or warranty under the common law of Alabama and Arizona, respectively.  But Key and Probasco do not identify any material

3.    Magnuson-Moss Warranty Act claims.

Congress passed the MMWA "to restrict the ability of sellers to disclaim the warranties implied under state law." Abraham, 795 F.2d at 247.  To state a claim under the MMWA, plaintiffs must adequately plead a cause of action for breach of written or implied warranty under state law.  E.g., Cooper v. Samsung Elecs. Am., Inc., 374 F. App'x 250, 254 (3d Cir. 2010) (MMWA claims properly dismissed where they were based upon plaintiff's state law claims of breach of express and implied warranties, both of which were also properly dismissed); Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1022 (9th Cir. 2008) (claims under the MMWA "stand or fall" with "express and implied warranty claims under state law").  As Probasco and Garcia have stated plausible breach of express warranty claims, and as Taylor has stated a plausible implied warranty claim, these plaintiffs have stated plausible claims under the MMWA.  All of plaintiffs' other MMWA claims are dismissed.

B.    Fraud and Consumer Protection Claims

1.    Rule 9(b).

On a motion to dismiss, allegations of fraud must satisfy the heightened pleading standards of Rule 9(b) by stating "with particularity" the circumstances constituting the fraud.  Fed. R. Civ. P. 9(b).  Where a fraud claim is based on an alleged affirmative misrepresentation, Rule 9(b) "requires that a complaint '(1)

---

contractual terms that were allegedly breached by Chrysler, other than the warranties.  Accordingly, Key's and Probasco's breach of contract claims rise and fall with their warranty claims, and are accordingly dismissed on the bases set forth above.  Key's breach of contract claim is thus fully dismissed; and Probasco's breach of contract claim may proceed to the extent it is predicated on the express warranties in his Maximum Care Coverage warranty.

specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" DiMuro v. Clinique Labs., LLC, 572 F. App'x 27, 30 (2d Cir. 2014) (summary order) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)).

Where a fraud claim is based on an alleged material omission, Rule 9(b) requires a plaintiff to set forth "(1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff, and (4) what defendant obtained through the fraud." Miller v. HSBC Bank U.S.A., N.A., No. 13 Civ. 7500, 2015 WL 585589, at *7 (S.D.N.Y. Feb. 11, 2015) (quoting Malmsteen v. Berdon, LLP, 477 F. Supp. 2d 655, 664 (S.D.N.Y. 2007)).  And, while "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), "plaintiffs must nonetheless allege facts 'that give rise to a strong inference of fraudulent intent,'" Loreley Fin. No. 3 Ltd. v. Wells Fargo Secs., LLC, -- F.3d --, 2015 WL 4492258, at *8 (2d Cir. July 24, 2015) (quoting Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290-91 (2d Cir. 2006)).

"One of the cardinal purposes of Rule 9(b) is to 'provid[e] a defendant fair notice of plaintiff's claim, to enable preparation of [a] defense.'" DiMuro, 572 F. App'x at 30 (alterations in original) (quoting DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987)).  Courts have applied Rule 9(b) to claims under almost all of the state consumer protection statutes at issue in this

action.  E.g., Silving v. Wells Fargo Bank, NA, 800 F. Supp. 2d 1055, 1075 (D. Ariz. 2011) (same for the ACFA); Omni USA, Inc. v. Parker-Hannifin Corp., 798 F. Supp. 2d 831, 836 (S.D. Tex. 2011) (same for the TDTPA); Llado-Carreno v. Guidant Corp., No. 09–20971–CIV, 2011 WL 705403, at *5 (S.D. Fla. Feb. 22, 2011) (same for the FDUTPA); Young v. Wells Fargo & Co., 671 F. Supp. 2d 1006, 1036-37 (S.D. Iowa 2009) (same for the SDDTPA); In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig., No. 08–939 (DRD), 2009 WL 2940081, at *8 (D.N.J. Sept. 11, 2009) (same for the NJCFA); Hollon v. Consumer Plumbing Recovery Ctr., No. 5:05-414-JMH, 2006 WL 1360805, at *5 (E.D. Ky. 2006) (same for the KCPA).

Defendants argue that plaintiffs' fraud and consumer protection claims should be dismissed under Rule 9(b) because plaintiffs have failed to identify the specific misrepresentations that form the basis for their claims.  However, plaintiffs' claims are primarily omission-based—essentially, they allege that Chrysler failed to disclose that TIPMs are prone to sudden failure.  Further, the Amended Complaint adequately sets forth in detail the context of these omissions—the who, what, when and where of Chrysler's omissions. The Amended Complaint alleges how Chrysler misled plaintiffs, and it clearly implies that Chrysler gained increased profits from vehicle sales as a result of its omissions regarding the TIPM.  Accordingly, although the Court believes it is a close call, dismissal of plaintiffs' fraud and consumer protection claims under Rule 9(b) is unnecessary, as plaintiffs have stated with particularity the circumstances constituting the alleged fraud.[18]

---

[18] To the extent that Chrysler seeks to argue that plaintiffs' various fraudulent concealment and consumer protection claims are also subject to dismissal for failure to plead facts giving rise to a

2.      <u>Fraudulent concealment claims.</u>

Plaintiffs assert fraudulent concealment claims under the laws of Alabama, Arizona, Florida, Georgia, Kentucky, Michigan,[19] New Jersey, New York, South Dakota, and Texas.  Only Probasco has stated a fraudulent concealment claim under Arizona law; all other fraudulent concealment claims brought by other plaintiffs must be dismissed.

In each state other than Arizona, the basic elements of a fraudulent concealment claim are generally: (1) a duty to disclose on the part of defendant; (2) concealment or failure to disclose by defendant; (3) reliance by the plaintiff (or inducement of plaintiff to act); (4) damages; and (5) proximate causation.[20]  <u>See, e.g.</u>, <u>Dodd v. Nelda Stephenson Chevrolet, Inc.</u>, 626 So.2d 1288, 1293 (Ala. 1993) ("To establish a prima facie case of fraudulent concealment of a material fact, a plaintiff must show (1) that the defendant had a duty to disclose a material fact, (2) that the defendant concealed or failed to disclose a material fact, (3) that the defendant's concealment or failure to disclose the material fact induced the plaintiff

_____

strong inference of fraudulent intent as required under Rule 9(b), they must make that argument more explicitly than they have done so here.

[19] In Claim II, plaintiffs assert a cause of action for fraudulent concealment on behalf of the nationwide class "under Michigan law or, alternatively, under the law of all states because there is no material difference in the law of fraudulent concealment."  (Am. Compl. ¶ 310.)  The Court will apply Michigan law as to this claim.

[20] Several states impose additional requirements.  Arizona and Georgia require plaintiff to allege <u>scienter</u> or intent. <u>Freeman v. Neal Klein Constr. Corp.</u>, No. 1 CA–CV 12–0664, 2013 WL 2644461, at *5 (Ariz. Ct. App. June 11, 2013); <u>ASC Constr. Equip. USA, Inc. v. City Commercial Real Estate, Inc.</u>, 693 S.E.2d 559 (Ga. Ct. App. 2010).  Georgia and South Dakota also require a plaintiff to allege that he or she could not have discovered the alleged defect in the exercise of due diligence or reasonable care.  <u>Meyer v. Waite</u>, 606 S.E.2d 16, 20 (Ga. Ct. App. 2004); <u>see</u> <u>Schwartz v. Morgan</u>, 776 N.W.2d 827, 831 (S.D. 2009).  And for fraudulent concealment claims based on a manufacturing defect, Georgia requires plaintiff to allege that defendant had knowledge of the defect.  <u>Home Depot U.S.A., Inc. v. Wabash Nat'l Corp.</u>, 724 S.E.2d 53, 63 (2012).

to act or to refrain from acting, and (4) that the plaintiff suffered actual damage as

a proximate result."); Hess v. Philip Morris USA, Inc., No. SC12–2153, 2015 WL

1472319, at *3 (Fla. Apr. 2, 2015) (under Florida law, the elements of a fraudulent

concealment claim are (1) concealment or failure to disclose a material fact; (2) that

the defendant knew or should have known the material fact should be disclosed; (3)

that the defendant knew their concealment of or failure to disclose the material fact

would induce the plaintiffs to act; (4) the defendant had a duty to disclose the

material fact; and (5) plaintiffs detrimentally relied on the misinformation);

Lilliston v. Regions Bank, 653 S.E.2d 306, 310 (Ga. Ct. App. 2008) ("A party can be

held liable for fraudulently concealing a material fact only if the party has a duty to

disclose or communicate the fact."); Meyer, 606 S.E.2d at 20 (A buyer who alleges

fraudulent concealment must allege "'(1) a false representation or omission of a

material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or

refrain from acting; (4) justifiable reliance; and (5) damages,'" and as to (4), must

allege "that he or she could not have discovered the alleged defect in the exercise of

due diligence."); Giddings & Lewis, Inc. v. Indus. Risk Insurers, 348 S.W.3d 729,

747 (Ky. 2011) ("[A] fraud by omission claim is grounded in a duty to disclose," and

"[t]o prevail, a plaintiff must prove: (1) the defendant had a duty to disclose the

material fact at issue; (2) the defendant failed to disclose the fact; (3) the

defendant's failure to disclose the material fact induced the plaintiff to act; and (4)

the plaintiff suffered actual damages as a consequence."); Lucas v. Awaad, 830

N.W.2d 141, 152 (Mich. Ct. App. 2013) ("To prove silent fraud, also known as

fraudulent concealment, the plaintiff must show that the defendant suppressed the truth with the intent to defraud the plaintiff and that the defendant had a legal or equitable duty of disclosure."); Zorba Contractors, Inc. v. Hous. Auth., City of Newark, 827 A.2d 313, 322 (N.J. App. Div. 2003) ("To establish a claim for common-law fraud, a plaintiff must demonstrate that: (1) defendant made a material misrepresentation or omission of fact; (2) knowing the misrepresentation to be false or the omission to be material, and intending the other party to rely on it; and (3) the other party did in fact rely on the misrepresentation or omission to its detriment." (citation omitted)); Warwick Dev., LLC v. McGruder, No. L–0409–13, 2014 WL 2197939, at *1 (N.J. App. Div. May 28, 2014) (duty to disclose is required to state a claim for fraudulent concealment); Bannister v. Agard, 125 A.D.3d 797, 798 (2d Dep't 2015) ("To properly plead a cause of action for fraud, a plaintiff must allege all of the following requisite elements: (1) the defendant made a misrepresentation or a material omission of fact which was false and which the defendant knew to be false; (2) the misrepresentation was made for the purpose of inducing the plaintiff to rely upon it; (3) the plaintiff justifiably relied on the misrepresentation or material omission; and (4) injury," and "the plaintiff must further allege a fifth element, namely, that the defendant had a duty to disclose the material information."); Taggart v. Ford Motor Credit Co., 462 N.W.2d 493, 499 (S.D. 1990); Hodges v. Rajpal, 459 S.W.3d 237, 246 (Tex. Ct. App. 2015) ("The elements of fraudulent concealment are: (1) existence of the underlying tort, (2) the defendant's knowledge of the tort, (3) the defendant's use of deception to conceal the

tort, and (4) the plaintiff's reasonable reliance on the deception."); Myre v. Meletio, 307 S.W.3d 839, 843 (Tex. Ct. App. 2010) ("Fraud by omission is a subcategory of fraud because the omission or non disclosure may be as misleading as a positive misrepresentation of fact where a party has a duty to disclose.").

A duty to disclose may arise in five situations.  First, a duty to disclose may arise as the result of a fiduciary or confidential relationship between the parties under the laws of Alabama,[21] Florida,[22] Georgia,[23] Kentucky, Michigan, New Jersey,[24] New York, South Dakota, and Texas.[25]  Grand Union Supermarkets of the

---

[21] In support of their argument that Chrysler had a duty to disclose the alleged TIPM defect under Alabama law, plaintiffs cite Hughes v. Hertz Corp., 670 So.2d 882, 888 (Ala. 1995) and Nesbitt v. Frederick, 941 So. 2d 950 (Ala. 2006).  In Hughes, the Supreme Court of Alabama held that for "the sale of a used car, if the seller knows of a defect that is likely to result in imminent danger through the vehicle's use or operation," then the seller has a duty to disclose.  670 So.2d at 888.  Hughes has no bearing on the instant action, as Chrysler is not alleged to sell used cars, and in any event Key, the Alabama plaintiff, purchased a new vehicle.  Nesbitt only concerns sales of residential real estate, see 941 So.2d at 956, and as such has no bearing on this action.

[22] In support of their argument that Chrysler had a duty to disclose the alleged TIPM defect under Florida law, plaintiffs cite Velasco v. Chrysler Grp. LLC, No. CV 13–08080 DDP (VBKx), 2014 WL 4187796 (C.D. Cal. Aug. 22, 2014), Jenson v. Bailey, 76 So.3d 980 (Fla. Dist. Ct. App. 2011), and Billian v. Mobil Corp., 710 So.2d 984 (Fla. Dist. Ct. App. 1998).  But Velasco concerns state consumer protection claims, not fraudulent concealment claims, see 2014 WL 4187796, at *7, and Jenson and Billian concern sales of residential real estate only, see Jenson, 76 So.3d 980 at 983-84; Billian, 710 So.2d at 987-88.  None of these three cases have any bearing on plaintiffs' fraudulent concealment claims.

[23] In support of their argument that Chrysler had a duty to disclose the alleged TIPM defect under Georgia law, plaintiffs cite Jennings v. Smith, 226 Ga. App. 765 (1997), and Ben Farmer Realty Co. v. Woodard, 441 S.E.2d 421 (Ga. Ct. App. 1994).  However, Jennings and Ben Farmer Realty only concern fraud in the sale of real estate.  See Jennings, 226 Ga. App. at 364; Ben Farmer Realty, 441 S.E.2d at 423.  As such, they have no bearing on the instant litigation.

[24] In support of their argument that Chrysler had a duty to disclose the alleged TIPM defect under New Jersey law, plaintiffs cite Grand Union Supermarkets of the Virgin Islands, Inc. v. Lockhart Realty Inc., 493 F. App'x 248 (3d Cir. 2012), and Rawson Food Services Inc. v. TD Bank, N.A., No. 13-3084, 2014 WL 809210 (D.N.J. Feb. 28, 2014).  However, the statements in Grand Union and Rawson concerning the duty to disclose material information involve the application of the law of New York law, not New Jersey.  See Grand Union, 493 F. App'x at 252; Rawson, 2014 WL 809210, at *4.

[25] In support of their argument that Chrysler had a duty to disclose the alleged TIPM defect under Texas law, plaintiffs cite to Pairett v. Gutierrez, 969 S.W.2d 512, 515 (Tex. Ct. App. 1998).  However,

V.I., Inc. v. Lockhart Realty Inc., 493 F. App'x 248, 252 (3d Cir. 2012); Gresh v. Waste Servs. of Am., Inc., 311 F. App'x 766, 772 (6th Cir. 2009); Mason v. Chrysler Corp., 653 So.2d 951, 954-55 (Ala. 1995); Taylor, Bean & Whitaker Mortg. Corp. v. GMAC Mortg. Corp., No. 5:05-cv-260-Oc-GRJ, 2008 WL 3200286, at *3 (M.D. Fla. Aug. 6, 2008); Bogle v. Bragg, 548 S.E.2d 396, 401 (Ga. Ct. App. 2001); United Jersey Bank v. Kensey, 704 A.2d 38, 44 (N.J. Super. Ct. App. Div. 1997); Schwartz, 776 N.W.2d at 831; see Brownell v. Garber, 503 N.W.2d 81, 85 (Mich. Ct. App. 1993); Seibert v. Gen. Motors Corp., 853 S.W.2d 773, 778 (Tex. Ct. App. 1993).

Second, a seller in an arm's-length transaction has a duty to disclose essential facts if they have superior knowledge of those facts and the buyer could not discover them through ordinary diligence under the laws of Kentucky and New York.  Gresh v. Waste Servs. of Am., Inc., 311 F. App'x 766, 772 (6th Cir. 2009) ("[A] seller may be obligated to disclose known risks or defects that a reasonable buyer would want to know and that he could not discover through ordinary diligence. . . . For example, a seller of a car may have a duty to disclose material defects known to it . . . ." (citations omitted)); Grand Union, 493 F. App'x at 252 ("[A] duty to disclose arises where one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair." (quoting Swersky v. Dreyer & Traub, 219 A.D.2d 321, 328 (N.Y. App. Div. 1996))).

Third, special circumstances or the particular circumstances of a case may give rise to a duty to speak under the laws of Alabama, Georgia, Michigan, and

the discussion of the duty to disclose in Pairett concerns TDTPA claims, not fraudulent concealment claims.  See id. at 515-16.

South Dakota.  Mason, 653 So.2d at 955 ("special circumstances" may "give rise to a

duty to speak"); Bogle, 548 S.E.2d at 401 (a duty to disclose may rise from "the

particular circumstances of the case"); see Titan Ins. Co. v. Hyten, 817 N.W.2d 562,

569 (Mich. 2012) (duty to disclose may be equitable); Schwartz, 776 N.W.2d at 831

(A party has a duty to disclose "if he knows that the other is about to enter into [a

transaction] under a mistake as to them, and that the other, because of the

relationship between them, the customs of the trade or other objective

circumstances, would reasonably expect a disclosure of those facts." (quoting

Ducheneaux v. Miller, 488 N.W.2d 902, 913 (S.D. 1992))).

Fourth, partial disclosure of relevant facts may give rise to a duty to disclose

under Florida and Kentucky law.  See Gresh, 311 F. App'x at 772 (defendant may

have duty to disclose if they "disclosed relevant facts, making what was said and

left unsaid materially misleading"); Taylor, Bean & Whitaker Mortg. Corp., 2008

WL 3200286, at *3 ( ("[E]ven in contractual situations where a party to a

transaction owes no duty to disclose facts within his knowledge or to answer

inquiries respecting such facts, the law is if he undertakes to do so he must disclose

the Whole truth." (quoting Vokes v. Arthur Murray, Inc., 212 So.2d 906, 909 (Fla.

Dist. Ct. App. 1968))).

Fifth, under Alabama law, inquiries by buyers regarding whether problems

similar to theirs had occurred in other automobiles give rise to a duty to disclose.

See Mason, 653 So.2d at 954-55.

Notably, unlike the other states discussed above, Arizona does not require a duty to disclose to support a claim for fraudulent concealment.  Lerner v. DMB Realty, LLC, 322 P.3d 909, 916 (Ariz. Ct. App. 2014) ("Unlike simple nondisclosure, a party may be liable for acts taken to conceal, mislead or otherwise deceive, even in the absence of a fiduciary, statutory, or other legal duty to disclose." (quoting Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund, 201 Ariz. 474, 483 (Ariz. 2002) (en banc))).  To state a claim for fraudulent concealment under Arizona law, a plaintiff must allege "that the defendant (1) knew of the alleged false information and (2) acted to 'intentionally prevent[] the plaintiff from finding the truth,' or, in other words, that the defendant actively concealed the truth."  Freeman, 2013 WL 2644461, at *5 (citation omitted) (quoting Wells Fargo Bank, 201 Ariz. at 496).

Plaintiffs have failed to allege a duty to disclose and, by extension, a plausible fraudulent concealment claim under the laws of Alabama, Florida, Georgia, New Jersey, South Dakota, and Texas.  Further, those states that recognize a duty to disclose arising from "superior knowledge" only impose such a duty on a seller in an arm's-length transaction—and Chrysler is not alleged to have sold plaintiffs their vehicles, or engaged in any direct transaction with them.  Thus, plaintiffs' fraudulent concealment claims under the laws of Kentucky, Michigan, and New York must be dismissed.

Probasco, however, has stated a claim for fraudulent concealment under Arizona law.  The Amended Complaint alleges that Chrysler knew of the TIPM

defect and made a deliberate decision not to disclose it in an attempt to mislead vehicle purchasers.  These allegations are sufficient to state a plausible fraudulent concealment claim under the law of Arizona.

        3.    <u>Consumer protection claims.</u>

Plaintiffs assert claims under consumer protection laws from Arizona, Florida, Georgia, Kentucky, New Jersey, New York, South Dakota, and Texas. Specifically, plaintiffs assert claims under the ACFA, the FDUTPA, the GUDTPA, the KCPA, the NJCFA, NYGBL §§ 349-50, the SDDTPA, and the TDTPA.  Chrysler has moved to dismiss certain of these claims on several grounds.[26]

        a)    Georgia.

Chrysler argues that Danielson's and Lee's GUDTPA claims must be dismissed because the only remedy available under the GUDTPA is injunctive relief against future wrongs, and Danielson and Lee are effectively seeking a remedy for past wrongs.  The Court agrees.

"[T]he sole remedy available under the [G]UDTPA is injunctive relief." <u>Moore-Davis Motors, Inc. v. Joyner</u>, 556 S.E.2d 137, 140 (Ga. Ct. App. 2001).  "An injunction is only available to remedy future wrongs 'and does not afford a remedy

---

[26] Chrysler's sole argument for dismissal as to plaintiffs' claims under the ACFA, FDUTPA, KCPA, SDDTPA, and TDTPA is its general assertion that to the extent these claims are based on alleged affirmative misrepresentations, plaintiffs fail to meet the particularity requirements of Rule 9(b). Because plaintiffs' claims may be construed as based primarily on omissions, rather than affirmative misrepresentations, the Court rejects Chrysler's argument that plaintiffs' claims fail for lack of alleging the who, what, where and when of the misrepresentations.  <u>See</u> <u>Miller</u>, 2015 WL 585589, at *7; <u>Malmsteen</u>, 477 F. Supp. 2d at 664-65.  Chrysler fails to raise any other arguments as to these statutes.  The Court therefore does not address whether plaintiffs adequately plead scienter or whether these claims suffer from any potential pleading deficiencies that may exist under requirements that are unique to Arizona, Florida, Kentucky, South Dakota, or Texas law.  At this stage, therefore, these claims may proceed.

for what is past.'" Terrill v. Electrolux Home Products, Inc., 753 F. Supp. 2d 1272, 1292 (S.D. Ga. 2010) (quoting Catrett v. Landmark Dodge, Inc., 560 S.E.2d 101, 106 (Ga. Ct. App. 2002)).

Danielson and Lee allege that they will suffer two future harms justifying the issuance of an injunction against Chrysler: (1) "the ongoing presence of defective TIPMs in their vehicles"; and (2) "the diminution in value of their vehicles."  (ECF No. 46 at 12.)  But these harms are due to past conduct, specifically Chrysler's alleged misrepresentations of the safety and quality of its vehicles and its failure to disclose the TIPM defect at the time plaintiffs purchased their vehicles or sometime beforehand.  Danielson and Lee do not allege that Chrysler will engage in any additional future conduct (beyond mere inaction) that will injure them.  Accordingly, Danielson's and Lee's claims under the GUDTPA are dismissed.

> b)   New Jersey.

Chrysler argues that Mingione's NJCFA claim fails on the grounds that a manufacturer does not violate that statute unless it knew with certainty that a product would fail, Alban v. BMW of N. Am., No. 09–5398 (DRD), 2011 WL 900114, at *10 (D.N.J. Mar. 15, 2011), and because a NJCFA action cannot be maintained "when the only allegation is that the defendant provided a part—alleged to be substandard—that outperforms the warranty provided," Glass v. BMW of N. Am., LLC, No. 10–5259 (ES), 2011 WL 6887721, at *9 (D.N.J. Dec. 29, 2011); see also Velasco v. Chrysler Grp. LLC, No. CV 13-08080 DDP (VBKx), 2014 WL 4187796, at *11 (N.D. Ca. Aug. 22, 2014) ("Several courts have held that a manufacturer's alleged failure to inform a consumer of a defect that becomes apparent after the life

of a warranty issued by the manufacturer cannot be the basis for an NJCFA omissions-based claim against the manufacturer."). The Court agrees that this second proposition supports dismissal, and therefore need not reach the first.

Although plaintiffs allege that, as a general matter, the TIPM defect may manifest both within and outside the 36-month / 36,000-mile Basic Limited Warranty period, Mingione claims that he began experiencing problems with his vehicle's TIPM <u>outside</u> of his Basic Limited Warranty period.[27]  The TIPM-related defect in Mingione's vehicle therefore cannot support a NJCFA claim.  Although New Jersey law appears to remain "unsettled on whether an exception exists for dangerous defects that become apparent after the expiration of an express warranty," <u>Velasco</u>, 2014 WL 4187796, at *11-12, several courts have declined to apply such an exception under the NJCFA, <u>id.</u> at *12 (stating that "it would be too great a leap from existing precedent to find a safety exception applicable" in a case alleging TIPM defects); <u>Noble v. Porsche Cars N. Am., Inc.</u>, 694 F. Supp. 2d 333, 338 (D.N.J. 2010); <u>Duffy v. Samsung Elecs. Am., Inc.</u>, No. CIV.06-5259 (DRD), 2007 WL 703197, at *7-8 (Mar. 2, 2007).  It is unclear whether a dangerous defect exception would even be appropriate on these facts, as Mingione alleges only that his vehicle failed to start, that the battery died because of repeated start attempts, and on one occasion the vehicle's electrical system shut down for a moment.  (<u>See</u> Am. Compl. ¶ 223.)  Because Mingione does not allege that his vehicle's TIPM became defective

---

[27] Mingione did not begin experiencing issues with his new 2011 Dodge Ram 1500 until over three years after he purchased it.  (<u>See</u> Am. Compl. ¶¶ 216, 223.)  He does not allege that he received any warranty other than the Basic Limited Warranty from Chrysler.  (<u>See</u> Am. Compl. ¶¶ 216-27.)

until after the expiration of the Basic Limited Warranty, his NJCFA claim cannot pass muster.

          c)      New York.

Chrysler argues that Garcia's claims under NYGBL §§ 349-50 should be dismissed because Garcia fails to identify false and misleading advertising statements. Chrysler's argument fails because, as explained above, Garcia's claims are primarily based on alleged omissions, and omissions are actionable under NYGBL §§ 349 and 350. See Leider v. Ralfe, 387 F. Supp. 2d 283, 292 (S.D.N.Y. 2005); DeAngelis v. Timberpeg E., Inc., 51 A.D.3d 1175, 1177 (3d Dep't 2008). Furthermore, claims brought under NYGBL § 349 are "not subject to the pleading-with-particularity requirements of Rule 9(b)," Pelman ex rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005), and the New York Court of Appeals has noted that "[t]he standard for recovery under [NYGBL] § 350, while specific to false advertising, is otherwise identical to section 349," Goshen v. Mut. Life Ins. Co. of N.Y., 774 N.E.2d 1190, 1195 n.1 (N.Y. 2002). Accordingly, Chrysler's motion to dismiss Garcia's claims under NYGBL §§ 349-50 is denied.

    C.    Leave to Amend

In their opposition, plaintiffs request leave to amend their complaint should the Court dismiss any of their claims. (ECF No. 46 at 24.) Rule 15(a) of the Federal Rules of Civil Procedure requires that leave to amend be freely granted "when justice so requires." Fed. R. Civ. P. 15(a)(2). "However, it is well established that leave to amend a complaint need not be granted when amendment would be futile." Ellis v. Chao, 336 F.3d 114, 127 (2d Cir. 2003). Futility turns on whether an

amended pleading could withstand a motion to dismiss under Rule 12(b)(6).

Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991).

Because the defects in plaintiffs' dismissed claims primarily relate to insufficiently specific and detailed factual allegations, the Court finds that amendment would not be futile. Plaintiffs are therefore granted leave to file a new complaint within 14 days of this decision.

## IV. CONCLUSION

For the foregoing reasons, Chrysler's motion to dismiss is GRANTED IN PART AND DENIED IN PART. All dismissals are without prejudice. The dispositions of plaintiffs' 38 claims are as follows:

| Claim | Applicable Law | Summary of Claim | Disposition |
|---|---|---|---|
| Claim I | Federal | MMWA | Dismissed as to all plaintiffs except Garcia, Probasco, and Taylor |
| Claim II | Michigan | Fraudulent concealment | Dismissed |
| Claim III | Alabama | Breach of contract / common law warranty | Dismissed |
| Claim IV | Alabama | Fraudulent concealment | Dismissed |
| Claim V | Arizona | ACFA | Proceeds |
| Claim VI | Arizona | Breach of contract / common law warranty | Proceeds |
| Claim VII | Arizona | Fraudulent concealment | Proceeds |
| Claim VIII | Florida | FDUTPA | Proceeds |
| Claim IX | Florida | Breach of express warranty | Dismissed |
| Claim X | Florida | Breach of implied warranty of | Dismissed |

|  |  | merchantability |  |
|---|---|---|---|
| Claim XI | Florida | Fraudulent concealment | Dismissed |
| Claim XII | Georgia | GUDTPA | Dismissed |
| Claim XIII | Georgia | Breach of express warranty | Dismissed |
| Claims XIV | Georgia | Breach of implied warranty of merchantability | Dismissed |
| Claim XV | Georgia | Fraudulent concealment | Dismissed |
| Claim XVI | Kentucky | KCPA | Proceeds |
| Claim XVII | Kentucky | Breach of express warranty | Dismissed |
| Claim XVIII | Kentucky | Breach of implied warranty of merchantability | Dismissed |
| Claim XIX | Kentucky | Fraudulent concealment | Dismissed |
| Claim XX | New Jersey | NJCFA | Dismissed |
| Claim XXI | New Jersey | Implied warranty of merchantability | Dismissed |
| Claim XXII | New Jersey | Fraudulent concealment | Dismissed |
| Claim XXIII | New York | NYGBL § 349 | Proceeds |
| Claim XXIV | New York | NYGBL § 350 | Proceeds |
| Claim XXV | New York | Breach of express warranty | Proceeds |
| Claim XXVI | New York | Fraudulent concealment | Dismissed |
| Claim XXVII | North Carolina | NCUDTPA | Dismissed |
| Claim XXVIII | North Carolina | Breach of implied warranty of merchantability | Dismissed |
| Claim XXIX | North Carolina | Fraudulent concealment | Dismissed |
| Claim | South | SDDTPA | Proceeds |

| XXX | Dakota | | |
| Claim XXXI | South Dakota | Breach of implied warranty of merchantability | Dismissed |
| Claim XXXII | South Dakota | Deceit (fraud by omission) | Dismissed |
| Claim XXXIII | Texas | TDTPA | Proceeds |
| Claim XXXIV | Texas | Breach of implied warranty of merchantability | Proceeds |
| Claim XXXV | Texas | Fraud by concealment | Dismissed |
| Claim XXXVI | Virginia | VCPA | Dismissed |
| Claim XXXVII | Virginia | Implied warranty of merchantability | Dismissed |
| Claim XXXVIII | Virginia | Fraud by concealment | Dismissed |

The schedule for plaintiffs' filing of a second amended complaint (the "Second Amended Complaint") and associated briefing shall be as follows: (1) plaintiffs shall file the Second Amended Complaint not later than 14 days from the date of entry of this order; (2) Chrysler shall answer or move to dismiss not later than 21 days after the filing of the Second Amended Complaint; (3) plaintiffs shall file their opposition not later than 21 days after Chrysler files its opening brief; (4) Chrysler shall file its reply not later than 7 days after plaintiffs file their opposition.

The Clerk of Court is directed to close the motion at ECF No. 40.

SO ORDERED.

Dated:      New York, New York
            September 1, 2015


                              _____
                              KATHERINE B. FORREST
                              United States District Judge